1
2
3
4                   **UNITED STATES DISTRICT COURT**
5                  **NORTHERN DISTRICT OF CALIFORNIA**
6                        **SAN JOSE DIVISION**
7

8   KRIS J PUGA, et al.,                    Case No.  25-cv-04655-BLF

9              Plaintiffs,

10        v.                                **ORDER GRANTING-IN-PART AND
                                            DENYING-IN-PART DEFENDANT
11  MONTEREY COUNTY DEPARTMENT               MONTEREY COUNTY'S MOTION TO
    OF SOCIAL & EMPLOYMENT                   DISMISS; AND GRANTING-IN-PART
12  SERVICES, et al.,                        AND DENYING-IN-PART EMPLOYEE
                                            DEFENDANTS' MOTION TO DISMISS**
13             Defendants.
                                            [Re:  ECF Nos. 29, 65]
14

15        Before the Court are two motions.  The first is Defendant Monterey County's ("County")

16  Motion to Dismiss Plaintiffs' First Amended Complaint as to the County.  ECF No. 29 ("Mot.");

17  *see also* ECF No. 54 ("Reply").  Plaintiffs Kris J. Puga, Megan Puga, Jk.P., Ja.P., and H.P. oppose

18  the motion.  ECF No. 39 ("Opp.").  The Court held a hearing on the motion on November 14,

19  2025.  ECF No. 79.

20        The second is a Motion to Dismiss brought by Defendants Anna Cerda, Sinta De La Rosa,

21  Christina Sanchez, Raquel Avila, and Peggy Medearis-Preacher (the "Employee Defendants").

22  ECF No. 65 ("Emp. Mot."); *see also* ECF No. 74 ("Emp. Reply").  Plaintiffs oppose the motion.

23  ECF No. 67 ("Pl. Opp.").  The Court finds the motion suitable for resolution without oral

24  argument and VACATES the hearing set for January 22, 2026.  *See* Civ. L.R. 7-1(b).

25        For the reasons stated by the Court on the record and those that follow, the County's

26  motion is GRANTED-IN-PART and DENIED-IN-PART, and the Employee Defendants' motion

27  is GRANTED-IN-PART and DENIED-IN-PART.

28

*United States District Court*
*Northern District of California*

## I. BACKGROUND

This case arises from juvenile dependency proceedings in California state court. On November 28, 2023, the Monterey County Department of Social and Employment Services ("Department") received an allegation of general neglect in connection with the conduct of Plaintiff Kris Puga, the father of four minor children (collectively, the "Minor Plaintiffs"). ECF No. 18 ("FAC") ¶ 43.

This referral arose after minor N.P. attempted to overdose because of a "gender crisis." *Id.* ¶ 44. After recovering, N.P. did not want to return home. *Id.* Instead, N.P. allegedly "falsely claimed" that the family's home was "dirty" and "infested with cockroaches," that the parents fought, that the parents "physically disciplined" one of their other children, and that Mr. Puga "used substances." *Id.* ¶ 45.

In response to the report, a county social worker, Defendant Anna Cerda, interviewed the three oldest children "outside of the parents' presence." *Id.* ¶ 46. She also spoke to Kris Puga and Megan Puga (collectively, the "Parents"). At that time, Mr. Puga was the primary caretaker of the children because the mother had suffered a stroke and was deemed medically blind. *Id.* ¶ 47. Mr. Puga had lost his job taking care of the family. *Id.*

Ms. Cerda observed the youngest child, Minor Plaintiff H.P., as "healthy, clean, and happy." *Id.* ¶ 46. The house was "clean and tidy." *Id.* Minor Plaintiff Jk.P. "denied all allegations" because "everything was great at home." *Id.* ¶ 48. Jk.P. also reportedly "did not want to be taken away from his parents." *Id.* Minor Plaintiff Ja.P. explained that although he had seen his mother "occasionally" hit his father "on the back of his head," his parents typically argued "with their words." *Id.* ¶ 49. Ja.P. further stated that while his parents "sometimes used" physical discipline, they "did not leave bruises or marks." *Id.* ¶ 52. Ja.P. also explained that his father did the household chores and that there were no rats in the home. *Id.* ¶ 53. The family reported that N.P. had been struggling after going through a breakup with a boyfriend. *Id.* ¶¶ 48, 50. The Parents stated that they were supportive of N.P.'s gender identity. *Id.* ¶ 47. Ms. Cerda concluded that most of the allegations regarding neglect and abuse were "inconclusive" but found the allegations of emotional abuse as to three of the children "substantiated." *Id.* ¶¶ 54–57.

After "observing the home to be clean and appropriate" Ms. Cerda "attempted to remove" the children from their parents without a warrant. *Id.* ¶ 58. Law enforcement declined to do so. *Id.* ¶ 60. Ultimately, Ms. Cerda "forc[ed] the parents to give up custody of their three young children" by telling them that their children would be removed unless they agreed to a "fraudulent 'safety plan,'" whereby the children would live with their paternal grandmother until a dependency petition could be filed. *Id.* ¶¶ 46–61.

The Department then filed a petition on behalf of the four children. *Id.* ¶ 62. The petition "reiterated" the allegations that led to the investigation, although Ms. Cerda had determined that most of them were inconclusive. *Id.* Plaintiffs allege that the petition was "prepared, filed and signed" by Christina Sanchez and "approved" by Raquel Avila, both of whom are County social workers. *Id.* ¶¶ 36, 39. The Department removed the children from their paternal grandmother's home and placed them in foster care. *Id.* ¶ 63. Following removal, the Department allegedly "launched" a "deceitful campaign to deprive" Mr. Puga of a hearing in connection with the dependency petition. *Id.*

The children were returned to their parents after the state appellate court reversed the order removing the children from their father's care. *Id.* ¶ 64; *see also id.* Ex. A, *In re B.P.*, Nos. H051748, H052054, 2025 WL 65780 (Cal. Ct. App. Jan. 9, 2025). Plaintiffs filed their initial complaint on June 3, 2025. ECF No. 1. Plaintiffs allege that the Department then "retaliated" by sending a social worker to the home on "an alleged referral of unclean home" two weeks later on June 17, 2025. FAC ¶ 64. The FAC was filed on June 23, 2025.

Plaintiffs assert eight causes of action:

(1) Violation of the Fourth and Fourteenth Amendments arising from an "Interview of Minor Without Parental Notice/Consent" (*id.* ¶¶ 68–72);

(2) Violation of the Fourth and Fourteenth Amendments arising from "Removal Without a Warrant" (*id.* ¶¶ 73–81);

(3) Violation of the Due Process Clause as a result of "Deception in Presentation of Evidence to Court" (*id.* ¶¶ 82–87);

(4) Violation of the Fourth and Fourteenth Amendments arising from "Medical Exams

3

1   Without Parental Notice/Consent" (*id.* ¶¶ 88–91);

2   (5) Municipal *Monell* Liability (*id.* ¶¶ 92–96);

3   (6) Intentional Infliction of Emotional Distress ("IIED") (*id.* ¶¶ 97–100);

4   (7) Violation of the Americans with Disabilities Act ("ADA") (*id.* ¶¶ 101–104); and

5   (8) First Amendment Retaliation (*id.* ¶ 105–108).

6   Claims three, five, six, seven, and eight are specifically brought against the County.

7   Claims one, two, three, four, six, and seven are brought against at least one of the Employee

8   Defendants.  Plaintiffs also allege that the "*Monell* liability of the County" applies to each of the

9   claims brought against only the Employee Defendants.  *See id.* ¶ 17.  Plaintiffs allege having

10  suffered severe emotional distress leading to physical ailments, *id.* ¶ 65, and "humiliation and

11  embarrassment and loss of reputation in the community," *id.* ¶ 66.  Plaintiffs seek general, special

12  and compensatory damages, punitive damages, statutory damages, and attorney's fees.  *Id.* at

13  Prayer for Relief.

## II.    LEGAL STANDARD

### A.    Rule 12(b)(6)

16   Dismissal of a complaint is appropriate under Rule 12(b)(6) "if the complaint fails to state

17  a cognizable legal theory or fails to provide sufficient facts to support a claim."  *Sinclair v. City of*

18  *Seattle*, 61 F.4th 674, 678 (9th Cir. 2023).  When considering a Rule 12(b)(6) motion, a court must

19  "take all allegations of fact as true and construe them in the light most favorable to the nonmoving

20  party."  *Id*.  While a complaint need not contain detailed factual allegations, it "must contain

21  sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

22  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

23  570 (2007)).

### B.    Leave to Amend

25   In deciding whether to grant leave to amend, the Court must consider the factors set forth

26  by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the

27  Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003).  A district

28  court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present:

United States District Court
Northern District of California

4

1    (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by

2    amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Id.* at 1052.

3    "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.*

4    However, a strong showing with respect to one of the other factors may warrant denial of leave to

5    amend. *Id.*

6         **C.   Qualified Immunity**

7         The doctrine of qualified immunity shields government officials from liability for harm

8    caused by reasonable mistakes, protecting all but the "plainly incompetent or those who

9    knowingly violate the law." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting *Ashcroft v. al-Kidd*,

10   563 U.S. 731, 743 (2011)). A qualified immunity analysis involves two steps. When a defendant

11   asserts qualified immunity, the Court must evaluate: (1) whether the plaintiff has pled facts

12   showing that the defendant violated a constitutional right, and (2) whether the constitutional right

13   was clearly established at the time of the defendant's alleged misconduct. *See S.B. v. Cnty. of San*

14   *Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017). Courts may exercise their discretion in deciding

15   "which of the two prongs of the qualified immunity analysis should be addressed first in light of

16   the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 242 (2009).

17        A defendant may raise qualified immunity in a motion to dismiss. *See Keates v. Koile*,

18   883 F.3d 1228, 1235 (9th Cir. 2018). A complaint may be dismissed on the basis of qualified

19   immunity only if the Court "can determine, based on the complaint itself, that qualified immunity

20   applies." *See Hampton v. California*, 83 F.4th 754, 765 (9th Cir. 2023) (quoting *Polanco v. Diaz*,

21   76 F.4th 918, 925 (9th Cir. 2023)). "If the operative complaint 'contains even one allegation of a

22   harmful act that would constitute a violation of a clearly established constitutional right,' then

23   plaintiffs are 'entitled to go forward' with their claims." *Keates*, 883 F.3d at 1235 (quoting

24   *Pelletier v. Fed. Home Loan Bank of S.F.*, 968 F.2d 865, 872 (9th Cir. 1992)).

25   **III.   REQUEST FOR JUDICIAL NOTICE**

26        Plaintiffs request that the Court take judicial notice of *In re B.P.*, Nos. H051748, H052054,

27   2025 WL 65780 (Cal. Ct. App. Jan. 9, 2025), attached as Exhibit A to the FAC. FAC ¶ 3.

28   Plaintiffs seek to rely on the opinion, arguing that it is "admissible as an undisputed fact" under

United States District Court
Northern District of California

the Federal Rules of Evidence.  Opp. at 16.  The County agrees that court records may be noticed for facts concerning the court proceedings but argues they may not be judicially noticed for the truth of facts recited therein.  Reply at 2–3.

A court may take judicial notice of adjudicative facts that are "not subject to reasonable dispute."  Fed. R. Evid. 201(b).  A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)–(2).  However, "[j]ust because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).  While the Court "may take judicial notice of the existence of unrelated court documents[] . . . it will not take judicial notice of such documents for the truth of the matter asserted therein."  *In re Bare Escentuals, Inc. Secs. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010).  Accordingly, the Court takes judicial notice of *In re B.P.* but does not take judicial notice of any facts described therein.  To the extent Plaintiffs seek to rely on any facts stated in *In re B.P.*, the Court advises Plaintiffs that they must allege each fact clearly in the body of the Complaint.

## IV.    MONTEREY COUNTY'S MOTION TO DISMISS

The County seeks to dismiss the FAC on the grounds that (1) Plaintiffs fail to identity a basis for *Monell* liability against the County, (2) Plaintiffs do not adequately plead any specific cause of action against the County, and (3) punitive damages are not recoverable against the County.  Plaintiffs contend that the FAC has alleged sufficient facts in connection with the County's *Monell* liability and each individual cause of action.  Plaintiffs also argue that the County is liable for punitive damages.

### A.    The County's *Monell* Liability

As a threshold matter, the Court evaluates which claims alleged against the County are brought under a *Monell* theory.  In the FAC, Plaintiffs allege that "*Monell* liability of the County applies to each of the Claims for Relief alleged against the individual Defendant-employees . . . as their actions and failures to act are the basis for the constitutional violations complained of herein

under federal regulatory, statutory or decisional law." FAC ¶ 17.  Plaintiffs bring a standalone *Monell* claim but fail to specify which underlying constitutional violations are at issue.  *See id.* ¶¶ 92–96.  Plaintiffs also indicate that they "seek" to hold the County liable on the ADA claim "under the theory of law set forth in *Monell*."  *Id.* ¶ 102.

The County only argues that Plaintiffs do not adequately allege facts supporting *Monell* liability in connection with the "claims against the County based on the actions of County employees."  Mot. at 6.  The Court will construe Plaintiffs' fifth claim as alleging *Monell* liability in connection with each constitutional claim that comes before it in the FAC, and accordingly evaluates the motion as seeking to dismiss claims one through five against the County.  Whether the ADA claim passes muster under *Monell* is not before the Court.

The County argues that Plaintiffs do not allege "any specific, plausible facts" that would lead to *Monell* liability and instead rely on "shotgun pleading of various inflammatory, unsupported assertions scattered throughout the FAC."  Mot. at 6.  Plaintiffs respond that the County "attempts to dispose of any vicarious liability as an employer" despite Plaintiffs having alleged "Defendant County's faulty practices, policies, and procedures that led to the actionable conduct."  Opp. at 12.

The Supreme Court has been clear that a county cannot be held liable under § 1983 pursuant to a theory of vicarious liability.  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("[L]ocal governments are responsible only for their own illegal acts . . . They are not vicariously liable under § 1983 for their employees' actions.") (internal citations and quotation marks omitted); *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

Rather, to bring a claim against a municipality, a § 1983 plaintiff must allege that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by" the officers of the entity, or that the deprivation occurred pursuant to a widespread "custom" practiced by the entity.  *Id.* at 690–91.  A plaintiff must allege facts that, when accepted as true, are sufficient to demonstrate that (1) he

possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

Policies that lead to liability under *Monell* can include "written policies," "unwritten customs and practices," and "failure to train" employees. *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1153 (9th Cir. 2021). Here, Plaintiffs variously characterize their theories of *Monell* liability as arising from the Department's "policies, practices, and customs" and having "no training or inadequate training to prepare social workers for recurring circumstances." FAC ¶ 18.

### 1. Policy, Custom, or Practice

First, Plaintiffs allege that the County has a "policy, custom, or practice" of putting false or exaggerated facts into applications for warrants filed by social workers. *Id.* ¶¶ 19–23. This "nefarious conduct" has allegedly "persisted for decades." *Id.* ¶ 21. Second, Plaintiffs allege that the County "has a policy, custom, or practice" of workers preparing "[p]etitions" without having personally investigated the allegations at issue or contacting the investigating social worker. *Id.* ¶¶ 24–31. They allege that "non-existent or inadequate training" in addition to an "utter failure to discipline or reprimand social workers" for "deceitful and despicable behavior" amounts to "deliberate indifference" under the Fourth and Fourteenth Amendments. *Id.* ¶ 27. This practice has allegedly been confirmed in other "civil rights cases . . . brought by similarly situated plaintiffs." *Id.* ¶¶ 29–30. The FAC promises to make these other cases "available to the Court upon further investigation." *Id.* ¶ 26. Third, Plaintiffs allege that the County "has a policy, custom, or practice of conducting investigative interviews of minor children who are not the subject of any allegations of abuse or neglect" without "the knowledge or consent of the children's parents." *Id.* ¶ 31. Plaintiffs assert that this practice has "been found to exist in other similar cases, all filed within the past several years in this Northern District Court." *Id.* ¶ 34.

Plaintiffs' boilerplate claims with respect to the County's customs are unsupported by factual allegations that would plausibly give rise to *Monell* liability. *See Garcia v. Cnty. of Napa*,

United States District Court
Northern District of California

No. 21-cv-03519-HSG, 2022 WL 110650, at *5–6 (N.D. Cal. Jan. 12, 2022) (explaining that courts "have found vague assertions of municipal policies to be insufficient" and collecting cases). Allegations regarding policies, customs, and practices are inadequate where they lack "any factual allegations regarding key elements of the *Monell* claims, or, more specifically, any facts demonstrating that [plaintiffs'] constitutional deprivation was the result of a custom or practice of the [County] or that the custom or practice was the 'moving force' behind [plaintiffs'] constitutional deprivation." *Dougherty*, 654 F.3d at 900–01.

Plaintiffs assert repeatedly that the County has various policies, customs, or practices. But the only facts they include relate to the circumstances of Plaintiffs and unsubstantiated references to the existence of the County's policies and practices. Plaintiffs invoke other "known" cases but do not identify them. Thus, Plaintiffs fail to plausibly allege *Monell* theories predicated on the County's customs or practices. *See Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996) ("Liability for improper custom . . . must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

### 2. Failure to Train

The Court turns to Plaintiffs' failure-to-train theory of *Monell* liability. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. at 62. A plaintiff must allege facts sufficient to show that the County's failure to train amounted to a "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact." *Id.* (alterations in original) (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989)).

To allege a failure-to-train theory, a § 1983 plaintiff must "include sufficient facts to support a reasonable inference (1) of a constitutional violation; (2) of a municipal training policy that amounts to a deliberate indifference to constitutional rights; and (3) that the constitutional injury would not have resulted if the municipality properly trained their employees." *Benavidez*, 993 F.3d at 1153–54.

Plaintiffs' vague allegations that the County should be held liable based on the County's "complete or inadequate failure to train" are conclusory and insufficient. *See, e.g.*, FAC ¶¶ 13, 16,

9

United States District Court
Northern District of California

18, 28, 94. Because Plaintiffs' allegations do not support any inference that the County's conduct amounted to deliberate indifference to constitutional rights or that the alleged constitutional injuries would not have occurred had there been proper training, *Benavidez*, 993 F.3d at 1153–54, Plaintiffs' failure-to-train theory is subject to dismissal.

***

In sum, claims one through five, to the extent each is alleged against the County, are DISMISSED because Plaintiffs have not adequately alleged *Monell* liability. *See Garcia*, 2022 WL 110650, at *8. The Court finds that none of the *Foman* factors weighs against permitting amendment, so the dismissal is WITH LEAVE TO AMEND.

### B. Intentional Infliction of Emotional Distress

The County argues that Plaintiffs' IIED claim is barred because Plaintiffs failed to properly allege compliance with the California Tort Claims Act. Mot. at 7. Plaintiffs argue that the FAC "sufficiently states that Plaintiffs have followed proper procedure consistent with California's Government Tort Claims Act." Opp. at 20.

IIED is a tort claim arising under California law. The California Tort Claims Act, Cal. Gov. Code, §§ 900 *et seq.*, requires the timely presentation of a written claim and the rejection of the claim in whole or in part before a plaintiff files suit. *See Mangold v. Cal. Pub. Utils. Comm'n*, 67 F.3d 1470, 1477 (9th Cir. 1995). "Where compliance with the Tort Claims Act is required, the plaintiff must allege compliance or circumstances excusing compliance, or the complaint is subject to general demurrer." *Id.* (quoting *Snipes v. City of Bakersfield*, 145 Cal. App. 3d 861, 865 (1983)). It is proper to dismiss a state law claim where a plaintiff fails to allege facts demonstrating or excusing compliance with the Tort Claims Act. *See, e.g.*, *Creighton v. City of Livingston*, 628 F. Supp. 2d 1199, 1225 (E.D. Cal. 2009).

Here, the FAC states that "Plaintiffs have complied and/or substantially complied with the State of California's tort claim notice procedures." FAC ¶ 4. Plaintiffs allege that this compliance took the form of mailing the relevant completed and signed form, and, out of an "abundance of caution," submitting "a Request for Leave to File a Late Claim with the County." *Id.* ¶¶ 5–8. Plaintiffs have done more than merely assert they exhausted their state tort claims. *Cf. Cardenas*

1   *v. Cnty. of Tehama*, 476 F. Supp. 3d 1055, 1070 (E.D. Cal. 2020).  Because Plaintiffs have

2   sufficiently alleged compliance with the Tort Claims Act, the Court DENIES the motion with

3   respect to the IIED claim.

### C.    Disability Discrimination

5       Ms. Puga alleges that the County violated her rights under the Title II of the ADA.  The

6   County argues the ADA claim falls "well short" of Rule 8's pleading requirements because the

7   FAC does not "describe any specific situation in which she was denied access by reason of her

8   disability, including through denial of a potential accommodation."  Mot. at 8.  The County

9   contends that Plaintiffs have not identified "any specific policy or custom that would allow the

10  Court to hold the County liable based on the conduct of its employees."  *Id.*  Plaintiffs respond that

11  the County acted in "complete disregard" of Ms. Puga's "legal blindness," which requires "special

12  accommodations."  Opp. at 10.

13      Under Title II of the ADA, "no qualified individual with a disability shall, by reason of

14  such disability, be excluded from participation in or be denied the benefits of the services . . . of a

15  public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  To allege

16  a Title II claim, a plaintiff must state facts showing that (1) she is a qualified individual with a

17  disability; (2) she was excluded from participation in or denied the benefits of a public entity's

18  services, programs, or activities, or were otherwise discriminated against by the public entity; and

19  (3) this exclusion, denial, or discrimination was by reason of her disability. *See Cohen v. City of*

20  *Culver City*, 754 F.3d 690, 695 (9th Cir. 2014).

21      Although Plaintiffs have alleged that Ms. Puga has a disability, they have not alleged any

22  facts demonstrating that she needed or requested access to an accommodation because of her

23  disability, or that she was so denied.  The FAC alleges only that Ms. Puga has been "[m]edically

24  [b]lind in both eyes since October 11, 2022," and has received "[z]ero [a]ccommodations" under

25  the ADA.  FAC ¶ 101.  Plaintiffs also allege that the County lacks "adequate policies, customs,

26  and practices" to "accommodate parents with disabilities."  *Id.*  These conclusory allegations do

27  not any state any facts that, taken as true, demonstrate disability discrimination or failure to

28  accommodate.  Accordingly, the ADA claim is DISMISSED.  *See Wayne v. Sierra Cnty.*, No. 25-

1  cv-1113-DAD-CKD, 2025 WL 2410966, at *13 (E.D. Cal. Aug. 20, 2025).  Because none of the

2  *Foman* factors weighs against permitting amendment, the dismissal is WITH LEAVE TO

3  AMEND.

4      **D.    Retaliation**

5      Plaintiffs assert that the County retaliated against Plaintiffs for filing this lawsuit by

6  "sending a social worker" to the house on "an alleged referral that the home was not clean."  FAC

7  ¶ 105.  The lawsuit was filed on June 3, 2025, ECF No. 1, and the alleged retaliatory visit took

8  place on June 17, 2025—two weeks later.

9      Defendants urge that because the County was not served until August 12, 2025, after the

10  allegedly adverse action, the retaliation claim is "nonsensical on its face."  Mot. at 9.  The County

11  cannot have retaliated for conduct the County was not aware of.  *Id.*  Plaintiffs argue the

12  subsequent social worker visit is "actionable as [a] ripe retaliatory act under the First

13  Amendment."  Opp. at 11.

14      To allege a First Amendment retaliation claim, a plaintiff must state facts sufficient to

15  plausibly demonstrate that (1) she engaged in constitutionally protected activity; (2) as a result,

16  she was subjected to adverse action by the defendant that would chill a person of ordinary

17  firmness from continuing to engage in the protected activity; and (3) there was a substantial causal

18  relationship between the constitutionally protected activity and the adverse action.  *Blair v. Bethel*

19  *Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).

20      The temporal proximity between the constitutionally protected activity (the filing of the

21  instant lawsuit) and the retaliatory conduct (the cleanliness visit) is sufficient to raise a plausible

22  inference of a causal connection between the two.  *See Pardi v. Kaiser Found. Hosps.*, 389 F.3d

23  840, 850 (9th Cir. 2004) (holding that the "temporal proximity" between "protected activities" and

24  "adverse acts" sufficiently raises an inference of a causal link).  Whether the County was on notice

25  of the lawsuit goes beyond the four corners of the pleadings and is not properly considered on a

26  motion to dismiss.  *See Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).  Accordingly, the

27  motion to dismiss the First Amendment retaliation claim is DENIED.

28

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### E.    Punitive Damages

Plaintiffs seek punitive damages in connection with each of their claims against the County. FAC ¶¶ 87, 91, 96, 100, 104, 108. The County argues that the Court should dismiss all claims against the County to the extent they seek punitive damages because the County is not subject to such damages as a matter of law. Mot. at 9. Plaintiffs contend that the alleged wrongdoing "is not immune" from punitive damages. Opp. at 21–24.

"[A] municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Facts Concert, Inc.*, 453 U.S. 247, 271 (1981). The cases Plaintiffs cite are inapposite. For example, *Smith v. Wade* held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." 461 U.S. 30, 56 (1983). However, *Smith*'s holding is solely with respect to *individual* defendants, not public entities. *See id.* at 35 & n.5 (citing *Newport* for its holding that "a municipality (as opposed to an individual defendant) is immune from liability for punitive damages under § 1983" because "deterrence of constitutional violations would be adequately accomplished by allowing punitive damage awards directly against the responsible individuals").

Nor are punitive damages available under Title II of the ADA. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002). Finally, California Government Code § 818 bars punitive damages against the County with respect to the state law claim. Accordingly, Plaintiffs' punitive damages claims against the County are DISMISSED. Because any claims for punitive damages against the County would fail as a matter of law, amendment would be futile. Accordingly, the dismissal is WITH PREJUDICE.

## V.    THE EMPLOYEE DEFENDANTS' MOTION TO DISMISS

The Employee Defendants urge that the FAC should be dismissed because it does not comply with Rule 8 of the Federal Rules of Civil Procedure, Plaintiffs' constitutional claims against the individuals are barred by qualified immunity and are insufficiently alleged, and Plaintiffs' ADA claim cannot be asserted against the Employee Defendants in their individual

capacities.[1]  Emp. Mot. at 4–9.  Plaintiffs argue that the FAC includes sufficient facts to state each claim and that the Employee Defendants are not shielded by qualified immunity.  Pl. Opp. at 9–25.

### A.    Rule 8

The Employee Defendants move to dismiss the FAC on the ground that the pleading is long, repetitive, and internally inconsistent.  Emp. Mot. at 4.  Such stylistic qualms do not warrant dismissal.  The 57-page FAC is unlike the complaint in *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047 (9th Cir. 2011), the case cited by the Employee Defendants. There, the Ninth Circuit affirmed the district court's dismissal of a 733-page complaint because the pleading both "prejudice[d] the opposing party" and may have "show[n] bad faith."  *Id.* at 1059.  Here, the FAC is a reasonable length and not so disorganized, repetitive, or inconsistent as to prejudice the defendants.  *See Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1132–33 (9th Cir. 2008) (holding that it was an abuse of discretion for the district court to dismiss a 68-page complaint with prejudice, because although it "set out more factual detail than necessary," the pleading was "logically organized" and defendants would have "no difficulty in responding to the claims").  Accordingly, the FAC is not subject to dismissal as a consequence of its form.

### B.    § 1983 Claims

Plaintiffs bring four constitutional claims against the Employee Defendants: (1) violation of the Fourth and Fourteenth Amendments arising from interviews of the Minor Plaintiffs without notice to or consent of the Parents (FAC ¶¶ 68–72); (2) violation of the Fourth and Fourteenth Amendments due to the removal of the Minor Plaintiffs without a warrant (*id.* ¶¶ 73–81); (3) violation of the Due Process Clause resulting from deception in presentation of evidence to court (*id.* ¶¶ 82–87); and (4) violation of the Fourth and Fourteenth Amendments arising from

---

[1] On reply, the Employee Defendants correctly observe that Plaintiffs' briefing of the two motions to dismiss collectively exceed the allowed page limit set out in the Court's Standing Order re Civil Cases.  Emp. Reply at 2–3 (*citing* Standing Order re Civil Cases § IV.A).  Indeed, the standing orders explain that page limits are "per side, not per party," and Plaintiffs were limited to 25 pages in total for their oppositions to the motions to dismiss.  Standing Order re Civil Cases § IV.A.  While the Court will accept this set of non-conforming briefs, the Court admonishes Plaintiffs to comply with this Court's standing orders in future filings.  The Court will strike any non-conforming documents.

United States District Court
Northern District of California

medical exams of the Minor Plaintiffs without parental notice or consent (*id.* ¶¶ 88–91).

The Employee Defendants argue that each cause of action must be dismissed because Plaintiffs have not alleged facts sufficient to state a claim.  Emp. Mot. at 4–7.  The Employee Defendants further contend that qualified immunity bars the claims.  *Id.*

Plaintiffs argue the FAC alleges sufficient facts in connection with each claim and the Employee Defendants are not entitled to qualified immunity.  Pl. Opp. at 9–18.  Plaintiffs also contend that all eight causes of action flow from the Employee Defendants' alleged judicial deception in the juvenile dependency proceedings to "unlawfully remove Minors from their custodial parents without a warrant."  *Id.* at 10.

Despite Plaintiffs' statements to the contrary, the Court notes that solely the third cause of action, which arises from the Employee Defendants' alleged presentation of false evidence to the court, flows from the right to be free from judicial deception.  The other seven causes of action arise under different rights or statutes and are rooted in distinct sets of facts.  Moreover, the Employee Defendants assert qualified immunity only in connection with the four constitutional claims brought against them, listed above.

To state a § 1983 claim against an individual, a plaintiff must allege that the conduct (1) was committed by a person acting under the color of state law; and (2) deprived the plaintiff of a federal constitutional or statutory right.  *Patel v. Kent Sch. Dist.*, 648 F.3d 965, 971 (9th Cir. 2011).  Because the Employee Defendants do not contest that they were acting under color of state law, the Court will address only whether Plaintiffs have adequately alleged that they were deprived of constitutional rights and whether qualified immunity applies.  The Court analyzes each cause of action in turn.

### 1.    Deception in Presentation of Evidence to Court

Plaintiffs allege that their Fourteenth Amendment due process rights were violated because of the Employee Defendants' "present[ing] false statements and half-truths" in the documents in the underlying juvenile dependency proceedings.  FAC ¶¶ 82–87.  The Employee Defendants argue that this claim fails because the allegedly false statements are not identified with specificity.  Emp. Mot. at 7.  Moreover, "Plaintiffs do not allege that these same allegations were fabricated,

United States District Court
Northern District of California

simply that their minor children were lying and that [Ms.] Cerda could not determine whether they were lying." *Id.* At most, the allegations "amount to a claim that the Employee Defendants included some allegations in a dependency court petition that [Ms.] Cerda had reported and deemed inconclusive," not that they were fabricated. *Id.* Plaintiffs argue that they have alleged sufficient facts to state a claim and contend that case law forecloses the argument that the Employee Defendants' "deliberate omissions of the official information" were in any way "immaterial." Pl. Opp. at 21. As a consequence, Plaintiffs contend that qualified immunity does not attach. *Id.* at 20–21.

### a. Rule 12(b)(6)

The Court first considers whether the claim for judicial deception in the underlying juvenile dependency proceedings has been sufficiently alleged under Rule 12(b)(6). To state a claim of judicial deception, "a plaintiff must allege '(1) a misrepresentation or omission (2) made deliberately or with a reckless disregard for the truth, that was (3) material to the judicial decision.'" *Scanlon v. Cnty. of Los Angeles*, 92 F.4th 781, 799 (9th Cir. 2024) (quoting *David*, 38 F.4th at 801); *see also Hardwick v. Cnty. of Orange*, 844 F.3d 1112, 1118–20 (9th Cir. 2017).

The FAC asserts that in the dependency petition and later documents, the Department included allegations "of dirty home, physical and emotional abuse, and domestic violence by the parents" although Ms. Cerda had found allegations of physical abuse and general neglect to be inconclusive for all four children. FAC ¶¶ 62, 84.

Although the FAC alleges that the Employee Defendants "acted to deliberately or recklessly avoid all the duties and obligations" to be "truthful, accurate, and complete," *id.* ¶¶ 83–84, these allegations are boilerplate and do not support the inference that the misrepresentations at issue were made recklessly or deliberately, rather than negligently. Nor do Plaintiffs allege facts sufficient to show that the alleged misrepresentations were material to the judicial determination that resulted in the Minor Plaintiffs' removal. In other words, Plaintiffs must state facts demonstrating the Ms. Cerda's conclusions would have changed the outcome in the juvenile court. Plaintiffs must also recite the allegedly false statements in detail and allege facts showing those statements to have been made deliberately or with reckless disregard for the truth.

### b.  Qualified Immunity

Plaintiffs may be able to allege the violation of a clearly established constitutional right to be free from judicial deception in juvenile court proceedings.  *See Hardwick*, 844 F.3d at 1118–20; *Keates*, 883 F.3d at 1240–41.  Because Plaintiffs have failed to allege sufficient facts to support the claim, however, the Court is unable to determine whether the Employee Defendants are entitled to qualified immunity.  *See O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (explaining that dismissal is not appropriate on the basis of qualified immunity unless the Court is able to determine, based on the complaint itself, that qualified immunity applies).  Accordingly, the Court will defer ruling on the Employee Defendants' assertion of qualified immunity.

*** 

On this basis, the Court GRANTS the motion to dismiss claim three WITH LEAVE TO AMEND and defers ruling on the Employee Defendants' assertion of qualified immunity.

### 2.    Searches and Seizures of Minor Plaintiffs

In their First, Second and Fourth causes of action, Plaintiffs bring § 1983 claims against the Employee Defendants based on unconstitutional searches and seizures of the Minor Plaintiffs. Plaintiffs allege that this conduct violated their Fourth and Fourteenth Amendment rights.  The Employee Defendants contend that these claims must be dismissed for two reasons.  First, they argue that Plaintiffs have not alleged sufficient facts to state a claim.  Second, they urge that these claims are barred by qualified immunity.  Emp. Mot. at 4–6.

Plaintiffs do not address these arguments specifically and instead assert generally that the FAC contains sufficient factual allegations to state each claim and that the conduct of the Employee Defendants is not protected by qualified immunity.  Pl. Opp. at 9–25.  Plaintiffs argue that all eight causes of action "stem from the judicial deception perpetrated by the Defendants," *id.* at 10, and accordingly rely on the "controlling instruction in *Hardwick*" to contend that the Employee Defendants "are not entitled to any immunity whatsoever," *id.* at 24.

As the Court explained above, the claims arising from unconstitutional searches and seizures of the Minor Plaintiffs do not flow from the right to be free from judicial deception. Instead, they arise under the Fourth Amendment right to be free from an unreasonable search or

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

seizure, and the Fourteenth Amendment right to familial association.  Moreover, these claims, which concern schoolhouse interviews and medical exams of the Minor Plaintiffs and the warrantless removal of the children from the Parents, all occurred separately from the allegedly false statements in petitions in the underlying dependency proceedings.

"To prevail on a section 1983 claim based on the Fourth Amendment, a plaintiff must show that the state actor's conduct was an unreasonable search or seizure."  *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 515 (9th Cir. 2018).  "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, . . . in some way restrained the liberty of a citizen.'"  *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1059 (9th Cir. 2019) (alterations in original) (*quoting Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).  As relevant here, the Fourth Amendment "protects a child's right to be free from unreasonable seizure by a social worker."  *Dees v. Cnty. of San Diego*, 960 F.3d 1145, 1154 (9th Cir. 2020).

Under the Fourteenth Amendment, states may not deprive "any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV § 1.  "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct."  *Lemire v. Cal. Dept. of Corrs. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013).  "[O]nly official conduct that 'shocks the conscience' is cognizable as a due process violation."  *Id.*

### a.  Medical Exams Without Parental Notice or Consent

Plaintiffs allege their rights were violated when the Employee Defendants subjected the Minor Plaintiffs to medical examinations without parental notice or consent.  FAC ¶¶ 88–91.  The Employee Defendants argue that because Plaintiffs make sparse and conclusory allegations, the claim has not been sufficiently stated.  Emp. Mot. at 5.  The Employee Defendants further contend that even if the claim was sufficiently stated, qualified immunity attaches because "a minor's right to be free from questioning or examination without parental consent is not clearly established."  *Id.*  In opposition, Plaintiffs stand on their sweeping rejection of the applicability of qualified immunity.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### i.    Rule 12(b)(6)

The Court first considers whether the claim is adequately alleged under Rule 12(b)(6). Plaintiffs assert that the Employee Defendants subjected the Minor Plaintiffs to medical or mental health examinations without prior notice to or the consent of the Parents.  FAC ¶ 88.  The Employee Defendants contend that the "allegations regarding any medical examinations are non-existent," Emp. Mot. at 5, and are accordingly insufficient to state a claim.

Absent "a reasonable concern that material physical evidence might dissipate . . . or that some urgent medical problem exists requiring immediate medical attention, the state is required to notify parents and to obtain judicial approval before children are subjected to investigatory physical examinations." *Wallis v. Spencer*, 202 F.3d 1126, 1141 (9th Cir. 2000); *see also Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1162 (9th Cir. 2018).  Accordingly, to state a claim arising from the medical exam of a minor, a plaintiff must allege facts sufficient to demonstrate that the state subjected a minor to an investigatory medical exam without notice to or the consent of the parents, exigent circumstances, or a reasonable concern about the preservation of evidence. *Wallis*, 202 F.3d 1141.

The Court agrees with the Employee Defendants that the allegations in the FAC are too sparse to plausibly state a claim.  Plaintiffs must allege facts demonstrating the nature of the examinations, when they occurred, and whether they were investigatory in nature.  Plaintiffs must also state facts sufficient to show that the examinations were not justified by exigency or the need to preserve evidence.

### ii.    Qualified Immunity

Plaintiffs may be able to allege the violation of a clearly established right to be free from investigatory medical examinations of the Minor Plaintiffs absent parental notice and consent, exigent circumstances, or a reasonable concern about the preservation of evidence.  *See Mann v. Cnty. of San Diego*, 907 F.3d 1154, 1161–62 (9th Cir. 2018); *Greene v. Camreta*, 588 F.3d 1011, 1036–37 (9th Cir. 2009), *vacated in part*, 563 U.S. 692 (2011); *Wallis v. Spencer*, 202 F.3d 1126, 1141–42 (9th Cir. 2000).  Because Plaintiffs have failed to allege sufficient facts to support the claim, however, the Court cannot determine from the FAC whether the Employee Defendants

1    are entitled to qualified immunity.  *O'Brien*, 818 F.3d at 936.

2                                                    ***

3         On this basis, the Court GRANTS the motion to dismiss claim four WITH LEAVE TO

4    AMEND and defers ruling on the Employee Defendants' assertion of qualified immunity.

5              **b.  Interview of Minor Plaintiffs Without Parental Notice or Consent**

6         Plaintiffs allege that Ms. Cerda, and her supervisor Sinta De La Rosa, violated their

7    constitutional rights by interviewing Jk.P. and Ja.P. at school without any "advance notice" to or

8    the "consent" of either parent.  FAC ¶ 68.  Plaintiffs assert that this conduct was in violation of the

9    Parents' Fourteenth Amendment rights and Jk.P. and Ja.P.'s Fourth Amendment rights.  *See id.*

10   ¶¶ 68–71.

11        The Employee Defendants argue that because Plaintiffs make "vanishingly few specific

12   allegations" in connection with the "time, place or circumstances" of the assertion that Minor

13   Plaintiffs were interviewed without parental notice or consent, the claim has not been sufficiently

14   stated.  Emp. Mot. at 5.  The Employee Defendants urge that even if Plaintiffs had alleged

15   sufficient facts to state a claim, the right to be free from questioning without parental consent is

16   not clearly established and the claim is accordingly barred by qualified immunity.  *Id.* at 5–6.  In

17   opposition, Plaintiffs do not address this issue other than asserting that the Employee Defendants

18   "are not entitled to any immunity whatsoever."  Pl. Opp. at 24.

19                              **i.    Clearly Established**

20        The Court begins with prong two of the qualified immunity analysis and considers whether

21   the right was clearly established at the time of the allegedly wrongful conduct.  The relevant

22   inquiry is whether "existing precedent 'squarely governs' the specific facts at issue."  *Kisela*

23   *v. Hughes*, 584 U.S. 100, 104 (2018) (citation omitted).  "Plaintiffs have the burden of showing

24   that the law was clearly established."  *Hart v. City of Redwood City*, 99 F.4th 543, 557 (9th Cir.

25   2024).

26        The Court finds that the Employee Defendants are entitled to qualified immunity because

27   the right at issue was not clearly established at the time of the alleged wrongdoing.  Plaintiffs have

28   not pointed to "prior case law that articulates a constitutional rule specific enough to alert *these*

[officials] in *this* case that *their particular conduct* was unlawful." *Sharp v. Cnty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017).  Plaintiffs have identified only *Hardwick*.  As discussed above, *Hardwick* centers on the right to be free from perjured testimony and deliberately fabricated evidence.  It is irrelevant.

Moreover, children's right to be free from schoolhouse interviews by social workers was not clearly established at the time of the alleged wrongdoing.  The Employee Defendants point the Court to *Capp v. County of San Diego,* 940 F.3d 1046 (9th Cir. 2019).  There, a social worker interviewed two minor children at elementary school without the consent of the father, based on reports of child abuse.  *Capp v. Cnty. of San Diego*, 940 F.3d at 1051.  The Ninth Circuit held that the right of minor children to be free from unconstitutional seizures and interrogations by government officials at school had not been clearly established.  *Id.* at 1059–60.  *Scanlon v. County of Los Angeles*, 92 F.4th 781 (9th Cir. 2024) is also on point.  There, the court held that a social worker was "entitled to qualified immunity as to claims stemming from her schoolhouse interview" of a minor plaintiff because the court was unable to "discern a clear rule from [prior] decisions."  *Id.* at 809.  The Ninth Circuit also declined to address the merits of the constitutional claim to further clarify the right.  *Id.*  Under *Capp* and *Scanlon*, children's right to be free from schoolhouse interviews absent parental consent has not been clearly established.  The rights of parents follow hand in hand.

***

Plaintiffs have not shown that the right at issue was clearly established at the time of the alleged wrongdoing.  As a consequence, the Court GRANTS the motion to dismiss claim one on the basis of qualified immunity.  Because qualified immunity is an "an immunity from suit rather than a mere defense to liability," *Cmty. House, Inc. v. City of Boise, Idaho*, 623 F.3d 945, 965 (9th Cir. 2010) (citation, quotation marks, and emphasis omitted), claim one is DISMISSED WITH PREJUDICE.

### c.  Removal Without a Warrant

Plaintiffs allege that the Employee Defendants "unlawfully remov[ed] the Minor[] [Plaintiffs] from their custodial parent."  FAC ¶ 75.  Plaintiffs assert that this warrantless removal

violated their Fourth and Fourteenth Amendment Rights.  *See id.* ¶¶ 73–81.  The Employee Defendants contend that this claim should be dismissed because Plaintiffs have not pled sufficient facts showing this removal violated clearly established constitutional rights.  Emp. Mot. at 6.  Plaintiffs do not directly oppose this argument and contend broadly that the FAC adequately alleges a constitutional violation.

The Ninth Circuit has held that "the Fourteenth, First, and Fourth Amendments provide a guarantee 'that parents will not be separated from their children without due process of law except in emergencies.'"  *Keates*, 883 F.3d at 1237 (quoting *Mabe v. San Bernadino Cnty. Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107–09 (9th Cir. 2001)).

Plaintiffs allege that on November 29, 2023, Ms. Cerda, "in consultation with" Ms. De La Rosa, attempted to remove the children without a warrant, but law enforcement declined to do so.  FAC ¶¶ 58–59.  Then, "under the duress of a forced and fraudulently obtained safety plan," the Employee Defendants removed the three Minor Plaintiffs, although there were no "exigent circumstances" so justifying.  *Id.* ¶ 75.  The safety plan appears to have been a temporary placement with the Minor Plaintiffs' paternal grandmother.  *Id.*

### i.    Clearly Established

The Court begins with prong two of the qualified immunity analysis and considers whether it was clearly established at the time that children may not be removed without a warrant absent exigent circumstances or parental consent.  Although Plaintiffs rely only on *Hartwick* in their briefing, Plaintiffs cite *Mabe v. San Bernardino County Department of Public Social Services*, 237 F.3d 1101 (9th Cir. 2001) in the FAC.  *See* FAC ¶ 76.  There, a county received allegations of sexual abuse of a minor in the home.  *Mabe*, 237 F.3d at 1104–05.  After further investigation over the next month, a county social worker "presented" her findings to a case review committee, which recommended that the minor be removed from the home and a dependency petition be filed.  *Id.* at 1105.  Upon receiving this recommendation, the social worker and a sheriff's deputy entered into the family's home without a warrant and removed the minor.  *Id.*  The Ninth Circuit affirmed that "parents [may] not be separated from their children without due process of law except in emergencies."  *Id.* at 1007.  Although the social worker had a reasonable belief that abuse had

occurred, the court explained that "*imminent* danger of future harm is required to show exigency." *Id.* at 1008.  The court found that the facts undermined a reasonable belief of an immediate threat of serious physical injury.  *Id.* at 1008.

The Court is satisfied that "case law clearly establishes that the rights of parents and children to familial association under the Fourteenth, First, and Fourth Amendments are violated if a state official removes children from their parents without their consent, and without a court order, unless information at the time of the seizure, after reasonable investigation, establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury, and the scope, degree, and duration of the intrusion are reasonably necessary to avert the specific injury at issue."  *Keates*, 883 F.3d at 1237–38.

### ii.    Constitutional Violation

The Court turns to prong one of the analysis and considers whether Plaintiffs have pled facts sufficient to allege that the Employee Defendants violated their constitutional rights. Defendants incorrectly contend that Plaintiffs allege that they "consented to the removal of the children to their paternal grandmother pursuant to a safety plan, consistent with the consent exception to the warrant requirement."  Emp. Mot. at 6.  To the contrary, the FAC goes on to state that the agreement to the safety plan was obtained under duress, which undermines the Employee Defendants' assertion that the Parents consented.  FAC ¶ 75; *see Keates*, 883 F.3d at 1237 (explaining that constitutional rights may be violated where "a state official removes children from their parents *without their consent*") (emphasis added); *Sangraal v. City & Cnty. of San Francisco*, No. 11-cv-04884-LB, 2013 WL 3187384, at *10 (N.D. Cal. June 21, 2023) ("One example of coercion is when a state agency lacks legal authority to remove the child but coerces parents into agreeing to a safety plan by threatening to remove the child anyway.").  The FAC supports a reasonable inference that the Minor Plaintiffs were removed without a warrant, and absent exigent circumstances.  Furthermore, no fair reading of the FAC supports the inference that the Parents consented to removal.

*** 

Because the constitutional right is clearly established and Plaintiffs have adequately

1    alleged a violation thereof, the Court DENIES the claim of qualified immunity WITHOUT

2    PREJUDICE and DENIES the motion to dismiss claim two.

3        **C.    Intentional Infliction of Emotional Distress**

4        The Employee Defendants urge that the IIED claim arising out of the conduct of the social

5    workers should be dismissed because Plaintiffs have not alleged any facts that demonstrate

6    extreme or outrageous conduct.  Emp. Mot. at 7–8.  Plaintiffs do not address this argument in their

7    opposition.

8        To state a claim for intentional infliction of emotional distress, a plaintiff must establish

9    "(1) that the defendant's conduct was outrageous, (2) that the defendant intended to cause or

10   recklessly disregarded the probability of causing emotional distress, and (3) that the plaintiff's

11   severe emotional suffering was (4) actually and proximately caused by the defendant's conduct."

12   *Scanlon*, 92 F.4th at 810.  "The conduct must be so extreme as to 'exceed all bounds of that

13   usually tolerated in a civilized community,' and the distress so severe 'that no reasonable person in

14   a civilized society should be expected to endure it.'"  *Hines v. Cal. Pub. Utils. Comm'n,* No. 07-

15   cv-4145-CW, 2008 WL 2631361, at *10 (N.D. Cal. June 30, 2008) (internal citations and

16   alterations omitted).

17       Plaintiffs allege that the extreme and outrageous conduct of the Employee Defendants was

18   intended to cause (or was reckless with respect to the likelihood of causing) Plaintiffs' emotional

19   distress, which "manifested in" "severe distress," including physical and emotional symptoms.

20   FAC ¶¶ 97–98; *see also id.* ¶¶ 65–66 (describing the consequences of Defendants' alleged

21   conduct).  The job of the Employee Defendants was to protect the Minor Plaintiffs' welfare.  The

22   allegation that Defendants removed Minor Plaintiffs without a warrant, thus causing emotional

23   distress, is sufficient to state a claim for IIED.  *See Weisman v. Cnty. of Los Angeles*, No. 12–cv-

24   10207-SJO, 2013 WL 12202779, at *10 (C.D. Cal. Sept. 5, 2013) ("That social workers tasked

25   with protecting a child would manufacture and present false evidence to the juvenile court in order

26   to separate that child from his parents . . . support[s] an IIED claim.").  The Court DENIES the

27   motion to dismiss claim six.

28

United States District Court
Northern District of California

### D.    Disability Discrimination

As discussed above, Ms. Puga brings an ADA claim on the ground that she was not provided with sufficient accommodations in connection with her medical blindness.  FAC ¶¶ 101–104.  The Employee Defendants contend that she cannot bring a Title II claim against them in their individual capacities as a matter of law.  Emp. Mot. at 8–9.  Plaintiffs charge that the Employee Defendants are "not entitled to any immunity whatsoever," including under the ADA, but do not otherwise address this issue.  Pl. Opp. at 24.

"[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA."  *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002).  Nor can individuals be sued in their individual capacities directly.  *See Burgess v. Carmichael*, 37 F. App'x 288, 292 (9th Cir. 2002) ("Plaintiffs may sue only a 'public entity' for [ADA] violations, not government officials in their individual capacities."); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc).  Because any ADA claim brought against the Employee Defendants will fail as a matter of law, claim seven is DISMISSED WITH PREJUDICE with respect to the individual defendants.

## VI.    ORDER

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

(1) The County's Motion to Dismiss the First Amended Complaint, ECF No. 29, is GRANTED-IN-PART and DENIED-IN-PART as follows:

    a. Claims one through five, to the extent that they allege constitutional violations pursuant to *Monell* against the County, are DISMISSED WITH LEAVE TO AMEND.

    b. The motion to dismiss claim six for the intentional infliction of emotional distress is DENIED.

    c. Claim seven for violation of the ADA is DISMISSED WITH LEAVE TO AMEND.

    d. The motion to dismiss claim eight for First Amendment retaliation is DENIED.

    e. All claims for punitive damages against the County are DISMISSED WITH

1   PREJUDICE.

2   (2) The Employee Defendants' Motion to Dismiss the First Amended Complaint, ECF

3   No. 65, is GRANTED-IN-PART and DENIED-IN-PART as follows:

4   a. Claim one, arising from schoolhouse interviews of the Minor Plaintiffs, is

5   DISMISSED WITH PREJUDICE.

6   b. The motion to dismiss claim two, arising from the warrantless removal of the

7   Minor Plaintiffs, is DENIED.

8   c. The motion to dismiss claim three, arising from deception in the presentation of

9   evidence to the court, is GRANTED WITH LEAVE TO AMEND.

10   d. The motion to dismiss claim four, arising from medical examinations of the

11   Minor Plaintiffs, is GRANTED WITH LEAVE TO AMEND.

12   e. The motion to dismiss claim six for the intentional infliction of emotional

13   distress is DENIED.

14   f. Claim seven for violation of the ADA is DISMISSED WITH PREJUDICE as

15   to the Employee Defendants.

16   (3) Plaintiffs SHALL file a second amended complaint within **30 days** after the date of this

17   order, by **January 12, 2026**.  Plaintiffs may not add new claims or parties without

18   express leave of the Court.

19

20   Dated:  December 12, 2025

21   _____

22   BETH LABSON FREEMAN
    United States District Judge

23

24

25

26

27

28